## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                Case No. 08-Cr-56

RICHARD HAEUSER and
MANDY HAEUSER,

    Defendants.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT

## NATURE OF CASE

On February 20, 2008, a federal grand jury sitting in this district returned a five-count indictment against defendants Richard and Mandy Haeuser. The defendants are charged in Count One of the indictment with falsely making counterfeited and altered obligations of the United States with intent to defraud, in violation of 18 U.S.C. § 471. Specifically, the defendants are charged with bleaching more than 270 federal reserve notes to make them appear to be $100 bills. Counts Two through Four charge both defendants with passing and attempting to pass falsely made, counterfeited and altered reserve notes, in violation of 18 U.S.C. § 472. Count Five charges the defendants with keeping in their possession and concealing nine falsely made, counterfeited and altered federal reserve notes that the defendants made to appear to be $100 bills, in violation of 18 U.S.C. § 472.

On February 21, 2008, the defendants appeared before this court for arraignment, entering pleas of not guilty. Pursuant to the pretrial scheduling order issued at that time, defendants Richard Haeuser and Mandy Haeuser each filed motions to suppress physical evidence. (Docket #28 and #30, respectively). Defendant Mandy Haeuser also filed a motion to suppress statements. (Docket #31). These motions will be addressed herein.

## MOTIONS TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

On June 17, 2008, the court conducted an evidentiary hearing on the defendants' motions to suppress. At the hearing, United States Secret Service Agents Thomas Doyle and Jeremy Eichberger testified on behalf of the government. Defendant Mandy Haeuser also testified at the hearing.

## Findings of Fact

In November 2007, Special Agent Thomas Doyle and other agents of the United States Secret Service were investigating the printing and passing of counterfeit currency. As a result of their investigation, defendants Mandy and Richard Haeuser became the primary suspects and warrants were obtained for their arrest. On February 1, 2008, at about 7:30 a.m., several law enforcement officers, including Secret Service agents, a female detective from the Washington County Sheriff's Department and a uniformed police officer from the Kewaskum Police Department went to he defendant's residence at 112 Timblin Drive, Apartment #1 in Kewaskum, Wisconsin to execute the warrants.

The law enforcement officers were in plain clothes except for the Kewaskum police officer who was in uniform. Although Special Agent Doyle was in plain clothes, his shirt indicated that he was with the Secret Service.

Upon arriving at the Haeusers' apartment, Special Agent Doyle knocked on the front door. The apartment is located on the first floor of a multi-unit apartment building. Defendant Richard Haeuser answered the door and Agent Doyle identified himself and the other officers and said they had warrants for the Haeusers' arrests. Defendant Richard Haeuser then tried to push the door shut, but after a brief struggle, the agents were able to push the door open. They arrested and handcuffed Mr. Haeuser and took him into the hallway temporarily.

The agents entered the apartment and conducted a protective sweep. Defendant Mandy Haeuser was in the first floor bathroom. Special Agent Doyle identified himself and advised her that she was under arrest. The defendants' young child, who was two to three years old, was also in the apartment.

After Mrs. Haeuser came out of the bathroom, Special Agent Doyle read Mrs. Haeuser her Miranda[1] rights from a preprinted advice of rights card. (Exh. I). There was no indication that she did not understand her rights or that she did not want to speak to the agents. She did not request an attorney. Mrs. Haeuser was taken upstairs so that she could take care of her child. She was not handcuffed and was cooperative. Mr. Haeuser was then brought back into the apartment.

Special Agent Doyle also read Mr. Haeuser his Miranda rights from an advice of rights card and Mr. Haeuser indicated that he understood his rights and would be willing to talk to the agents. Secret Service Special Agent Jeremy Eichberger interviewed Mr. Haeuser. Agent Eichberger explained the nature of the counterfeit currency investigation and told Mr. Haeuser that the agents either could get a warrant to search the apartment or Mr. Haeuser could

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

- 3 -

consent to the search. Mr. Haeuser told the agents that he would defer to his wife and she could make the decision to consent or not to consent to the search because she made all such decisions. Mr. Haeuser did not indicate that his wife had any problem that would impair her ability to give consent, nor did he state that he did not want the agents to search his home. Mr. Haeuser never voiced any concern about the search of the residence or his wife giving consent to the search.

During his conversation with the agents, Mr. Haeuser's speech was clear and his responses to questions were appropriate. There was no indication that he had been using drugs or that he was intoxicated. He did not ask for an attorney.

Special Agent Eichberger went upstairs and spoke to Mrs. Haeuser who was sitting on the bed in the bedroom. Prior to going upstairs, he confirmed that Special Agent Doyle had advised Mrs. Haeuser of her constitutional rights. Agent Eichberger advised Mrs. Haeuser of the nature of their investigation and told her of the conversation with Mr. Haeuser regarding consent to search the apartment. He told her that Mr. Haeuser had said that the issue of consent to search the residence was her decision. According to Special Agent Eichberger, Mrs. Haeuser gave verbal consent to conduct the search of the apartment. He then brought out a written consent to search form and read it to Mrs. Haeuser. He explained that the agents were looking for items relating to counterfeit currency. She had no questions.

Agent Eichberger testified that Mrs. Haeuser signed the written consent form authorizing the agents to search the residence. (Exh. 2). The first paragraph of the consent form which Mrs. Haeuser ultimately signed informed her that she had a "constitutional right not to have a search made . . . without a search warrant" and that she had a "right to refuse to consent to such a search." (Exh. 2). The second to last sentence on the form states: "This

- 4 -

written permission is given by me to the above named persons voluntarily and without threats, duress, or promises of any kind." Id.

During their conversation, Mrs. Haeuser gave Special Agent Eichberger an overview of her medical condition, stating that she takes marijuana for her bad back. Agent Eichberger told her that the agents were not interested in personal use quantities of marijuana. He asked Mrs. Haeuser if she had used any marijuana or taken any medications that day and she said no. There was no odor of marijuana in the residence. Mrs. Haeuser's speech was clear, her eyes were not bloodshot and her responses to questions were focused and appropriate. She appeared to have no difficulty understanding the agent's questions. She never asked the agent to repeat anything.

Mrs. Haeuser never indicated that she did not want the apartment searched. No threats, promises or physical force were used to get her to consent to the search. No search was conducted before the consent form was signed. After the form was signed, Special Agent Eichberger told Mrs. Haeuser that it would be easier if she would tell him where items relating to counterfeit currency were located. She indicated that they could be found in the second floor bedroom in the computer desk area.

Agent Eichberger than went downstairs and advised Mr. Haeuser and the other officers that Mrs. Haeuser had consented to the search. Mr Haeuser did not say that he did not want the agents to search the apartment.

Special Agent Eichberger later raised the issue of consent to search the defendants' vehicles parked at the residence. Mrs. Haeuser consented to the search of the vehicles and both she and Agent Eichberger initialed the consent form indicating Mrs. Haeuser's consent to conduct the vehicle searches. See Exh. 2.

- 5 -

During the search of the residence, the agents found a quantity of counterfeit currency, as well as a computer in a bedroom, They did not search the computer on the scene. Instead, Agent Eichberger spoke to Mrs. Haeuser and told her that they wanted to conduct a forensic examination of the computer. He asked her if she would consent to a search of the computer and related equipment. Agent Eichberger read the "Consent to Search Computer/Electronic Equipment" form to Mrs. Haeuser who agreed to the search and signed the consent form. (Exh. 3). The form states that the defendant has been advised of her right to refuse to consent to the search.

The agents were at the defendants' residence about one and a half to two hours. Mrs Haeuser was able to make telephone calls so that someone could come to the residence to care for their child.

Mr. Haeuser was transported to the federal courthouse while agents stayed with Mrs. Haeuser at the residence until a person came to take care of their young son. During her trip to the federal courthouse, Mrs. Haeuser was reminded of her <u>Miranda</u> rights and told that they still applied. According to Agent Eichberger, Mrs. Haeuser stated that although Mr. Haeuser participated in the counterfeiting, he was not the lead participant. She explained that he has a nursing background, was familiar with chemicals and was involved in the washing of the federal reserve notes. She described herself as the "meticulous one," as far as reproducing the federal reserve notes using the computer. (Transcript [Tr.] of Evidentiary Hearing at 72). She recounted their travels and explained how the agents could do a better job of investigating. There was no indication that Mrs. Haeuser was on drugs or intoxicants during her encounter with the agents.

- 6 -

Mandy Haeuser testified that she remembers someone coming to their apartment door and that a female officer took her out of the bathroom and patted her down. She testified that her memory from that day is somewhat hazy because of the medications she had taken. Mrs. Haeuser stated that she has numerous medical problems, including ovarian cysts, degenerative disc disease and cysts on her spine. She testified that her memory is cloudy throughout the day because of the effects of her medications.

Mrs. Haeuser testified that she had taken morphine and oxycondone at about 7:00 a.m. on the day she was arrested. According to Mrs. Haeuser, she feels the effects of the medications about 45 minutes to one hour after she takes them and that the effects wear off somewhat throughout the day. She testified that she was on various medications, including morphine, oxycondone, diazepam, and non-prescription vitamins. She stated that she does not drive a motor vehicle while she is on medication.

Mrs. Haeuser explained that her husband, who is a nurse, is her caregiver and knows her medications. She testified that she last used marijuana seven years ago and denied telling Special Agent Eichberger that she used marijuana. She testified that her husband does not use marijuana.

Mrs. Haeuser testified that she had taken the same medications prior to the evidentiary hearing that she had taken on the day of her arrest. She stated that her attorney had explained her rights to her five minutes before the evidentiary hearing, that she understood his explanation and knew she would be placed under oath. Shortly thereafter, Mrs. Haeuser testified that she did not remember what her attorney had explained to her just before the hearing, nor did she know what rights she was waiving by testifying. She later testified that she believed she remembered that her attorney explained her rights to her.

- 7 -

Case 2:08-cr-00056-CNC   Filed 07/31/08   Page 7 of 17   Document 50

When questioned about the form authorizing consent to search the residence, Mrs. Haeuser denied that the signature on the form was hers. She did not remember signing the form. She denied that the the handwriting on Exhibit 3 was hers and stated that she did not recognize the handwriting. She also denied signing the consent to search the computer form.

Mrs. Haeuser testified that although she could not remember her last place of employment, the last employment she recalled was with a trucking company. She could not remember what period of time she worked there. Mrs. Haeuser testified that she is never left alone with her children and that her sister lives down the hall.

Mrs. Haeuser did not remember making any statement to the agents or telling them that she was the meticulous one. Mrs. Haeuser remembered being in court on February 1, 2008, but did not remember being interviewed by a Pretrial Services officer and providing the officer with information about her employment and medical history.

## **ANALYSIS**

The defendants have filed motions to suppress all evidence seized by federal agents during the search of the defendants' home. The defendants maintain that the searches of their residence, automobile and computer are subject to suppression because the agents did not have a search warrant, Mr. Haeuser did not consent to the searches and Mrs. Haeuser did not freely and voluntarily consent to the searches. Mrs. Haeuser has also moved to suppress her statements to the agents because they were not made freely and voluntarily due to her impairments.

Mrs. Haeuser asserts that her confession must be suppressed because it was not recorded, contrary to the policy of the State of Wisconsin set forth in Wis. Stat. § 968.073.

- 8 -

Prior to receiving evidence at the evidentiary hearing, the court addressed this part of Mrs. Haeuser's motion, stating that it was denied. Because the court should have issued a recommendation on this issue, the court will recap the rationale for its conclusion and recommend to the district judge that this part of her motion to suppress be denied..

Section 968.073(2) of the Wisconsin Statutes states: "It is the policy of this state to make an audio or visual recording of a custodial interrogation of a person suspected of committing a felony" unless certain conditions apply or good cause is shown. The statute does not require suppression of an unrecorded statement taken from a defendant. Rather, the court should provide a cautionary instruction in such cases. See Wis. Stat. § 972.115(2)(a). Mrs. Haeuser provides no case law to support her position and attempts to distinguish United States v. Delaporte, 42 F.3d 1118, 1119 (7th Cir. 1994).

In Delaporte, the appeals court held that an alleged violation of state law by state law enforcement agents did not justify suppression of evidence in a federal prosecution. Mrs. Haeuser argues that since federal agents in this case acted contrary to state law, the federal government has an interest in preventing its agents from violating state law. To accept Mrs. Haeuser's argument would create the anomalous situation where evidence obtained in violation of state law by federal agents in a federal prosecution would be subject to suppression, while the same evidence obtained by state law enforcement officers would be admissible in the federal proceeding.

Moreover, in United States v. Montgomery, 390 F.3d 1013, 1017 (7th Cir. 2004), the court declined to expand the scope of Miranda to require the electronic recording of all interrogations. Rather, the court held that law enforcement officers are not constitutionally required to electronically record a post-arrest interrogation of a defendant.

- 9 -

Accordingly, Wis. Stat. § 968.073 does not require suppression of Mrs. Haeuser's statements. Therefore, the court recommends that the part of defendant Mandy Haeuser's motion seeking suppression of her statements because her statements were allegedly obtained in violation of state law should be denied.

The court will now address the defendants' motions to suppress evidence and the remaining portion of Mrs. Haeuser's motion to suppress statements.

Warrantless searches are per se unreasonable under the Fourth Amendment, but are subject to specific exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978); United States v. Robles, 37 F.3d 1260, 1263 (7th Cir. 1994). One of the exceptions to this general rule permits law enforcement officers conducting a search to enter a dwelling without a warrant if they obtain voluntary consent either from the individual whose property is to be searched or from a third party possessing common authority or joint control over the premises. United States v. Sandoval-Vasquez, 435 F.3d 739, 744 (7th Cir. 2006); United States v. Saadeh, 61 F.3d 510, 517 (7th Cir. 1995); United States v. Rosario, 962 F.2d 733, 736 (7th Cir. 1992) (citing Schneckloth v. Bustamonte, 412 U.S. 218 [1973] and United States v. Matlock, 415 U.S. 164 [1974]); see also, Florida v. Jimeno, 500 U.S. 248 (1991). "The government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given." Sandoval-Vasquez, 435 F.3d at 744. "Whether consent is voluntary is a question of fact dependent upon the totality of the circumstances." Id.

The standard for measuring the scope of an individual's consent under the Fourth Amendment "is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251; Illinois v. Rodriguez, 497 U.S. 177 (1990); United States v. Dorsey, 27 F.3d 285 (7th

- 10 -

Cir. 1994). The scope of a search is generally defined by its expressed object. Jimeno, 500 U.S. at 251; United States v. Ross, 456 U.S. 798 (1982). Moreover, consent searches are valid only if the consent was freely and voluntarily given. Schneckloth, 412 U.S. at 222.

A person's knowledge of his or her right to refuse is not a prerequisite of a voluntary consent. Schneckloth, 412 U.S. at 234. Thus, the subject of a Fourth Amendment search need not be aware of the right to refuse to give knowing and voluntary consent. Lenz v. Winburn, 51 F.3d 1540, 1548 (11th Cir. 1995); see also, Schneckloth, 412 U. S. at 234, 249.

When a person possessing common authority over an area permits an entry or search, that consent "'is valid as against the absent, nonconsenting person with whom that authority is shared.'" Rosario, 962 F.2d at 736 (quoting United States v. Duran, 957 F.2d 499, 503 [7th Cir. 1992] [quoting Matlock, 415 U.S. at 170]). Common authority "rests. . . on mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171 n.7.

To determine the voluntariness of a consent, the court must inquire whether, under the totality of the circumstances, law enforcement officers have overborne the will of the accused. Haynes v. Wash., 373 U.S. 503, 513-14 (1963); Schneckloth, 412 U.S. at 226. The court in Schneckloth detailed the factors to be considered when evaluating whether a defendant's "will was overborne" in the giving of statements:

> [T]he Court has assessed the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account include the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

412 U.S. at 226 (citations omitted); see also, Sandoval-Vasquez, 435 F.3d at 744.

- 11 -

The fragile emotional state of the accused at the time consent was given is a factor bearing on the issue of voluntariness. Duran, 957 F.2d at 503. However, the fact that the accused is extremely upset at the time she consents is not dispositive. Id. Unless the "emotional distress is so profound as to impair [a person's] capacity for self-determination or understanding of what the police were seeking, it is not enough to tip the balance."

In this case, the evidence establishes that Secret Service agents and local law enforcement officials went to the defendants' residence in Kewaskum, Wisconsin to execute arrest warrants for the defendants. Once the agents gained entry, Mr. Haeuser was arrested and handcuffed. Mrs. Haeuser was in the bathroom when the agents entered the residence. When she came out of the bathroom, Special Agent Doyle told her that she was under arrest and read Miranda rights to her from a Secret Service advice of rights card. Mrs. Haeuser gave no indication that she did not understand her rights or that she did not want to speak to Agent Doyle. Mrs. Haeuser was not handcuffed and was permitted to go upstairs to take care of their young son.

Special Agent Doyle also read Mr. Haeuser his constitutional rights from a pre-printed advice of rights card. Mr. Haeuser indicated that he understood those rights and was willing to talk to the agents. Special Agent Haeuser explained the nature of the counterfeiting investigation to Mr. Haeuser, asked for his consent to search the residence and told Mr. Haeuser that they could get a search warrant if the defendants did not consent to the search. Mr. Haeuser told the agents he would defer to his wife to decide whether or not to consent to the search.

Mr. Haeuser did not tell the agents that his wife had any problems that would impact her ability to decide about consenting to the search. He never stated that he did not want the

- 12 -

agents to search his residence or that he wanted an attorney. Mr. Haeuser responded appropriately and clearly to questions and exhibited no indications of drug use or intoxication.

Special Agent Eichberger interviewed Mrs. Haeuser in an upstairs bedroom and confirmed that she had been advised of her Miranda rights. He explained that the agents were conducting a counterfeiting investigation and were looking for items relating to counterfeit currency. He told her that her husband said she should make the decision about whether or not to give consent to search their apartment for evidence of counterfeiting. After Mrs. Haeuser gave verbal consent to the search, Special Agent Eichberger produced a written consent to search form and read it to her. She had no questions about the form or the consent to search.

According to Special Agent Eichberger, Mrs. Haeuser told him about her medical condition and explained that she takes marijuana for her back problems. There was no odor of marijuana in the apartment. Although Agent Eichberger testified that Mrs. Haeuser denied using marijuana or taking any medications that day, Mrs. Haeuser testified that she had taken medications at about 7:00 a.m., as well as on the previous night. Mrs. Haeuser testified that the medications cloud her memory and, therefore, her memory was hazy on February 1, 2008. However, Agent Eichberger testified that Mrs. Haeuser's responses to his questions were appropriate and focused, her speech was clear and lucid and she never asked the agent to repeat anything. She exhibited no indications of drug use.

Agent Eichberger testified that Mrs. Haeuser signed a consent to search the residence and also signed a consent to search the computer located in the bedroom. In her testimony, Mrs. Haeuser did not remember signing the consent to search the residence form and denied

that the signature on the form was hers. She also denied signing the consent form for the computer search, stating that she did not recognize the handwriting.

There is no dispute that Mrs. Haeuser was not handcuffed during the interview or that she was threatened, coerced or intimidated in any way to consent to the searches. No threats, promises or physical force was used to obtain her consent to search. In fact, Special Agent Eichberger testified that Mrs. Haeuser was cooperative, polite and cordial.

Based on the evidence presented at the hearing, the court finds the agents' testimony credible. They testified clearly and forthrightly about the events of February 1, 2008. The defendants' sole contention in support of their motions to suppress is that because Mrs. Haeuser was under the influence of prescription medications which impaired her judgment, she was incapable of waiving her rights and giving informed and voluntary consent to search their home and computer. However, Mr. Haeuser, a nurse, who also is his wife's caregiver and knowledgeable about the medication she takes, never mentioned that Mrs. Haeuser was under the influence of prescription or any other drugs. In fact, he deferred to his wife to decide whether or not to consent to the search when the agents asked him for consent to search the apartment. He told the agents that his wife made all decisions regarding matters like this. He never indicated in any way that his wife had medical problems that would impair her ability to give informed consent. Special Agent Eichberger also testified that Mrs. Haeuser denied taking any medications on the day of her arrest.

The court finds Mrs. Haeuser's testimony at the hearing not credible. Although she stated at the hearing that she was on the same medications that impaired her judgment on the day of her arrest, she was alert, articulate and understood and responded appropriately to the

- 14 -

questions posed to her. However, many of her responses were evasive, conflicting and incredible. She also was combative at times.

Mrs. Haeuser gave conflicting testimony during the hearing. When asked if her attorney had advised her of her rights immediately prior to the hearing, she initially testified that her lawyer had explained her rights to her. She testified that she understood those rights and knew she would be placed under oath before testifying. Shortly thereafter, she contradicted this by testifying that she did not remember what her attorney had said to her during their conversation five minutes before the hearing. She also testified that she did not know what rights she was waiving by testifying. Mrs. Haeuser then later testified that she believed she remembered that her attorney had explained her rights to her at that time.

Mrs. Haeuser also testified that she did not remember making any statements to the agents or being interviewed by the Pretrial Services Office prior to her initial court appearance. She also either denied or did not recall signing the consent forms and testified that she did not recognize the signatures on either form.

In light of all the evidence, the court finds that Mrs. Haeuser was properly advised of her constitutional rights and, considering the relevant factors, she knowingly and voluntarily consented to the search of her residence, automobiles and the computer. Although she claims that she was unable to consent to the searches because of the medications she was taking, such contention clearly is not credible. She responded appropriately to questions posed to her at the hearing. She spoke clearly and showed no evidence of impaired thinking. Yet, at the time of hearing, she was on the same medications that she had taken on the day of her arrest. Therefore, the court concludes that defendant Mandy Haeuser freely and voluntarily consented to the searches.

- 15 -

To the extent the defendants' claim that Mrs. Haeuser was not advised of her right to refuse to consent, such knowledge is not a prerequisite to a voluntary consent. See Schneckloth, 412 U.S. at 222. Moreover, the consent forms that Mrs. Haeuser signed stated that she had a right to refuse to consent to the search. See Exhibit 2.

Finally, to the extent that the defendants' contend that the search of their residence was unreasonable because the agents did not have a search warrant, it is well established that the Fourth Amendment's prohibition against warrantless searches does not apply when law enforcement officers obtain voluntary consent to search from a person with authority to consent to the search as in this case. Sandoval -Vasquez, 435 F.3d at 744. Such voluntary consent was obtained in this case.

Accordingly, for the reasons stated herein, Mrs. Haeuser knowingly and voluntarily consented to the search of their residence and computer and Mr. Haeuser acquiesced in this decision. Therefore, this court will recommend that the defendants' motions to suppress evidence and defendant Mandy Haeuser's motion to suppress statements be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Richard Haeuser's motion to suppress physical evidence. (Docket #28).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Mandy Haeuser's motion to suppress physical evidence. (Docket #30).

**IT IS ALSO RECOMMENDED** that the United States district judge enter an order **denying** defendant Mandy Haeuser's motion to suppress statements. (Docket #31).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 30th day of July, 2008.

                                                BY THE COURT:

                                                s/ Patricia J. Gorence
                                                PATRICIA J. GORENCE
                                                United States Magistrate Judge